## Cincinnati, New Orleans & Texas Pacific Railway Company v. Myers, et al.

(Decided September 23, 1915.)

### Appeal from Lincoln Circuit Court.

1. Carriers—Shipment of Stock—Burden on Carrier to Excuse Delay—Where live stock are delivered to a carrier for shipment and are not accompanied by the owner while in course of transportation, the burden of proof is on the carrier to explain any unreasonable delay in the carriage of the stock.

2. Trial—Of Issue of Fact by Court—Weight to Which Decision of Judge is Entitled.—Where the law and facts in a common law case are submitted to the judge, his finding of fact will be given the same weight as the verdict of a properly instructed jury.

K. S. ALCORN and JOHN GALVIN for appellant.

J. B. PAXTON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

At five P. M. on Tuesday, April 8, 1913, the appellees delivered to the appellant company at Moreland, Kentucky, for shipment to the Union Stock Yards in Cincinnati, Ohio, three carloads of cattle, consigned to Stearn, Frank & Company. The cattle, which were not accompanied by the shippers, were not delivered to the consignees until 1:45 P. M. on Wednesday, the 9th of April. In the ordinary course of transportation the cattle should have been delivered at the stock yards at seven or eight o'clock on the morning of Wednesday, which would have been in time for the sale of cattle on that day. As it was,

they were not received until the sales on Wednesday were over, and consequently the shippers sustained a loss of $311.41. To recover damages for the loss occasioned by the failure to deliver the cattle in reasonable time, this suit was brought, and the law and facts having been submitted to the court, there was a judgment in favor of the appellees for $310.93.

A reversal of this judgment is asked upon the ground that the evidence wholly fails to show that the cattle were not transported with reasonable diligence, and this being so, the petition should have been dismissed.

The evidence shows that the usual time required for the shipment of cattle from the point of delivery to destination is about twelve hours, and that in the ordinary course the cattle should have been delivered at the stock yards between six and eight o'clock on Wednesday, and so if the cattle left Moreland within an hour or two after they were loaded and delivered to the company, they would have reached the destination on the following morning at say between six and eight o'clock. The record does not show when the cattle left Moreland, but as they were loaded at five o'clock it is fair to assume that they left in a short while thereafter. At any rate, if there was any good reason why the cattle did not leave Moreland until some hours after they were loaded, it was incumbent on the company to explain the delay, and this it failed to do.

Lippold, a witness for the appellee, testified that on the morning of April 9th about seven o'clock he went to the station of the appellant company for the purpose of receiving the cattle of appellee. He testified that "I went to the freight depot of the Cincinnati, New Orleans & Texas Pacific Railway Company at McLean and Western Avenue about seven A. M., and asked the man in charge for the cattle, and he refused me, stating that the cattle were to be delivered immediately out to the Union Stock Yards." He further said that the Union Stock Yards were distant from the station about a mile and a quarter and that it would have taken about three-quarters of an hour to have driven the cattle from the station to the stock yards.

It is insisted that the evidence of this witness was not competent to fix the time when these cattle were received at the McLean and Western Avenue station of the railway company, but we think it was. He testified that he

was employed by the consignees of the cattle and had been instructed by his employers that the cattle were to be at the station and went there for the purpose of receiving them and taking them to the stock yards, and that the man in charge, who was the clerk of the company that had previously delivered cattle to him, refused to let him have them, and told him they would be delivered immediately.

If the evidence of this witness is correct, the delay in the delivery of the cattle at the stock yards was unreasonable and unnecessary, and we might add there is no explanation of this delay. Probably the reason why this delay was not explained grows out of the fact that the men in charge of the train on which the cattle were shipped testified that the cattle did not arrive at the McLean Avenue station until about 12:30 P. M. These railway employes further undertook to explain the causes for the delay in the transportation from the time the cattle left Danville, Kentucky, until they were delivered to the C. H. & D. Railroad Company, a connecting carrier, at 12:30 P. M., to be transported by it to the stock yards, at which place they arrived, as stated, about 1.45 P. M. It further appears from the evidence of the employes of the company that the train on which these cattle left Danville departed from that point at 10:55 P. M., but the more than five hours delay in the carriage from Moreland to Danville, a distance of only a few miles, is entirely unexplained, assuming that the cattle left Moreland about five o'clock P. M.

Without going further into the facts, as it does not seem to us necessary, it is not disputed that the cattle were delivered to the company at five P. M., and in the ordinary course of transportation should have reached the stock yards in about twelve hours, or before eight o'clock on the morning of April ninth. It further being conceded that the cattle were not delivered at the stock yards until 1:45 P. M., after the market for that day closed, it was incumbent upon the company, as there was no person in charge of the cattle, to explain this long delay. Whether this delay occurred between Moreland and Danville, or between the McLean Avenue station and the stock yards, is not material. If it occurred between Moreland and Danville, no explanation whatever is made of it. As to whether it occurred between the McLean Avenue station and the stock yards, there is sharp conflict in the evidence of Lippold, who testifies, in effect,

that the cattle were at the McLean Avenue station at seven A. M., and the testimony of the trainmen, that they did not get there until 12:30 P. M.

On this disputed issue of fact we will treat the finding of the court as we would the verdict of a properly instructed jury, and there being no explanation by the company of the delay in the movement of the cattle from the McLean Avenue station to the stock yards, it is apparent that if they arrived at the McLean Avenue station at seven A. M., there was unnecessary and unreasonable delay in the failure to deliver them to the stock yards within an hour after that time.

There is no question of law in this case, and giving to the facts as found by the court the weight that we would give to the verdict of a properly instructed jury, we find no reason for disturbing the judgment and it is affirmed.